UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GERARDO HERNANDEZ,

Plaintiff,

v.

TAQUERIA EL GRULLENSE, et al.,

Defendants.

Case No.  12-cv-03257-WHO

**ORDER ON MOTION FOR ATTORNEY'S FEES**

Re: Dkt. No. 72

## INTRODUCTION

Plaintiffs are entitled to reasonable attorney's fees when they prevail in lawsuits establishing a violation of the Americans with Disabilities Act ("ADA" or the "Act"), which has been described as "a milestone on the path to a more decent, tolerant, progressive society." *Board of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 375 (2001) (Kennedy, J., concurring).  This motion presents the problem of determining a fair award in an uncomplicated ADA matter to an experienced law firm that has been repeatedly criticized for the same unreasonable billing practices that it used in this case.  Plaintiff's counsel, the Law Offices of Paul S. Rein ("Rein Law"), seeks $87,730 in fees and $14,283 in costs (totaling $102,013) when its case required scant discovery and motion practices and resulted in a $10,000 payment to its client and up to $25,000 in remedial costs at the premises of the defendants.  Because of unreasonable overstaffing and billing practices, detailed below, I will award $50,453.68 in fees and $11,550 in costs, totaling $62,003.68.

## BACKGROUND

### I.  AMERICANS WITH DISABILITIES ACT

The ADA was adopted in 1990 to provide a "national mandate for the elimination of discrimination against individuals with disabilities" and to "address the major areas of

discrimination faced day-to-day by people with disabilities."[1]  42 U.S.C. § 12101(1), (4); *see also* H.R. REP. 101-485, 22-23.  The Act is "a milestone on the path to a more decent, tolerant, progressive society," *Board of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 375 (2001) (Kennedy, J., concurring), and "among the most salutary remedial laws ever passed by a well-intended Congress."  *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1341 (11th Cir. 2013). "The ADA creates the possibility that successful plaintiffs may establish permanent changes in the design and physical configuration of structures to better accommodate the disabled.  The benefits of such changes clearly redound not only to the plaintiffs themselves, but to similarly situated disabled persons, and the entire society at large."  *Walker v. Carnival Cruise Lines*, 107 F. Supp. 2d 1135, 1143 (N.D. Cal. 2000).  The ADA has increased access to public and commercial facilities for thousands of people.  *See, e.g.,* United States Comm'n on Civil Rights, "Sharing the Dream: Is the ADA Accommodating All?" (2000).[2]

Because of the benefit successful ADA plaintiffs confer upon the public at large, Congress authorizes that the prevailing party be awarded attorneys' fees "to encourage attorneys to handle these important cases."[3]  *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1077 (N.D. Cal. 2010).  "Such a policy ensures an incentive for 'impecunious' plaintiffs who can ill afford to litigate their claims against defendants with more resources."  *Walker*, 107 F. Supp. 2d at 1143 (citing *Bruce v. City Of Gainesville, Ga.,* 177 F.3d 949, 951 (11th Cir. 1999)).  California's Unruh Act likewise provides for attorneys' fees for the prevailing party, though unlike the ADA the California law awards

---

[1] The purposes of the ADA are also to "provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities" and to "ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities."  42 U.S.C. § 12101(2)-(3).

[2] Available at http:// www.usccr.gov/pubs/pubsndx.htm (under "Disability" hyperlink) (retrieved February 10, 2014.

[3] Under the ADA, "the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs."  42 U.S.C. § 12205.

attorneys' fees as a matter of right.[4]

In order to advance the objectives of the ADA, attorneys' fees awarded to prevailing plaintiffs must be sufficient to attract competent counsel. But fee awards should not produce a windfall to attorneys. *See, e.g., MacDougal v. Catalyst Nightclub*, 58 F. Supp. 2d 1101, 1107 (N.D. Cal. 1999) ("a reasonable attorney's fee should be adequate to attract competent counsel but [should] not produce windfalls to attorneys") (citing *Blum v. Stenson*, 465 U.S. 886 (1984)).

Attorneys' fees in ADA cases often greatly exceed the cost of the substantive relief, generating the hostility of small businesses towards ADA plaintiffs' attorneys. But the enforcement of the ADA and California's access laws by private attorneys general is central to those statutes' enforcement. Since the ADA provides for strict liability for denial of access— motive and intent are irrelevant—it is often wise for defendants to promptly investigate the premises and if they are not in compliance, admit liability and agree to fix the problems, forestalling the need for plaintiffs to incur attorneys' fees to achieve ADA compliance.

## II. GENERAL ORDER 56

To advance efficient and effective litigation of ADA cases and to address defendants' concerns about costs, in 2005 this District adopted General Order 56 to set a protocol for litigating ADA cases.[5] Paragraph 6 of General Order 56 provides that once the parties reach a tentative agreement on injunctive relief, "plaintiff shall forthwith provide defendant with a statement of costs and attorney's fees incurred to date, and make a demand for settlement of the case in its entirety." Paragraph 6 imposes two distinct requirements on plaintiffs—provide the defendant with a statement of costs and fees and make a demand for settlement. Paragraph 6 further provides that "[i]f requested by defendant, plaintiff should provide documentation and support for its attorney's fees similar to what an attorney would provide in a billing statement to a client."

A purpose of paragraph 6 is to limit the expenditure of attorneys' fees after the parties

---

[4] California Civil Code Section 55, governing actions under California's access laws, states that "The prevailing party in the action *shall* be entitled to recover reasonable attorney's fees." Cal. Civ. Code. § 55 (emphasis added).

[5] General Order 56 has been amended several times since 2005.

United States District Court
Northern District of California

United States District Court
Northern District of California

reach a tentative agreement.  By requiring plaintiffs to provide defendants a statement of attorneys' fees and costs incurred to date, and, if requested, detailed supporting documentation, paragraph 6 affords defendants the opportunity to assess the reasonableness of the claimed fees.  If the claimed fees and costs are reasonable, the parties can settle without incurring the expense of a fees motion.  On the other hand, if the parties cannot resolve the fees issue because a plaintiff claims an unreasonable amount of attorneys' fees, the court may reduce any eventual fee award on the basis that the plaintiff unreasonably protracted the litigation.  *See, e.g., Jankey v. Poop Deck*, 537 F.3d 1122, 1132 (9th Cir. 2008) (a court has discretion to reduce a fee award where the plaintiff unreasonably protracted litigation).[6]

### III. FACTUAL BACKGROUND

Plaintiff Gerardo Hernandez is a "physically disabled person who cannot walk due to paraplegia and who requires use of a wheelchair for locomotion."  Second Amended Complaint ¶ 4 [Dkt. No. 56].  On November 11, 2011, Hernandez had dinner at Taqueria El Grullense in Redwood City.  He alleges that he attempted to use the restroom after his meal but he "had difficulty entering the men's restroom in his motorized wheelchair because the doorway was very narrow and not of the required width to provide access; he could not physically get in far enough to reach the toilet."  *Id.* ¶ 11.  This episode caused Hernandez "to suffer difficulty, discomfort and embarrassment, all to his physical, mental and emotional damages."  *Id.*

Hernandez returned to Taqueria El Grullense in the last week of January 2012.  *Id.* ¶ 12.  According to the Second Amended Complaint,

> [Hernandez] returned to the restaurant in a smaller, manual wheelchair, thinking that perhaps this smaller wheelchair would fit into the restroom, but once "through" the exterior restroom doorway he suffered a similar experience being unable to use the restroom, got stuck in the men's restroom, encountered barriers which did not allow him to reach any toilet in time, and suffered a humiliating bodily functions accident causing him difficulty, discomfort and

---

[6] In practice, parties in ADA suits often reach a tentative agreement during mediation.  Settlement demands made during mediation are covered by the mediation privilege.  However, billing records provided pursuant to General Order 56 are not privileged.  Defendants are therefore well-served to request the detailed supporting documentation authorized by General Order 56, in particular where the defendants dispute the claimed fees.

1    extreme embarrassment, all to his physical, mental and emotional
     damages.

2  *Id.* Hernandez never complained or mentioned these incidents to Taqueria El Grullense.

3         Hernandez, represented by Rein Law, filed suit on June 22, 2012 against Taqueria El

4  Grullense, Juan Francisco Gamez Garcia, and Oscar Pang Cheng Liu and Chu Ching Liu as

5  Trustees of the Oscar Pang Cheng Liu and Chu Ching Liu Trust, alleging denials of full and equal

6  access to public facilities in violation of the ADA and California law.  Garcia is the operator of

7  Taqueria El Grullense and the lessee of the property.  Oscar Pang-Cheng Liu and Chu-Ching Kuo

8  Liu, through their trust, are the owners of the property.

9         On September 5, 2012, defendants Oscar Pang-Cheng Liu and Chu-Ching Kuo Liu filed a

10 motion to dismiss on the grounds that the complaint named the wrong trust.  Hernandez did not

11 oppose the motion to dismiss.  Instead, Hernandez sought leave to file an amended complaint

12 naming the proper trust, which the defendants did not oppose.  On October 9, 2012, the Court

13 denied the motion to dismiss and granted Hernandez's motion for leave to file a first amended

14 complaint.  Hernandez's first amended complaint was filed on October 9, 2012.  Dkt. No. 29.

15        The Court entered a case management order on October 26, 2012, setting a joint site

16 inspection for November 15, 2012.  On February 28, 2013, Hernandez filed a motion for leave to

17 file a second amended complaint "to give FRCP Rule 8 procedural notice of alleged additional

18 barriers to disabled access discovered during the joint General Order 56 site inspection."  Dkt. No.

19 53.  The motion was unopposed.  The Court granted Hernandez leave to file a second amended

20 complaint on March 19, 2013.

21        The parties attended mediation on March 20, 2013 where they came to terms on injunctive

22 relief and damages.  The defendants agreed to pay Hernandez $10,000 in damages and to complete

23 remedial measures not to exceed $25,000, including building handicap access ramps and creating

24 a handicap accessible unisex bathroom.  In accordance with General Order 56, plaintiff provided a

25 statement of their fees and costs at the mediation—$58,693.[7]  Rein Second Suppl. Decl. ¶¶ 2-3

26

27 _____
   [7] This statement is not covered by the mediation privilege since it is required by the General

28 Order.  There is nothing in the record to suggest that defendants requested supporting
   documentation for the statement of fees and costs at the mediation.

United States District Court
Northern District of California

1    [Dkt. No. 90]. Rein stated in a declaration that he offered to settle at that time for $54,184. *Id.*

2    The defendants did not accept this offer and the parties were unable to settle attorney fees and

3    costs. Instead, the parties filed a consent decree agreement memorializing the settlement, stating

4    that the attorneys' fees and costs "will be the subject of further negotiations and litigation if

5    necessary." The Court entered the consent decree on October 2, 2013. Dkt. No. 70.

6            On November 8, 2013, Hernandez, through Rein Law, offered to settle the case for

7    $55,000 in attorneys' fees and costs. The defendants did not respond to this offer. Instead, on

8    November 25, 2013, the defendants made a Rule 68 offer of $30,000 in attorneys' fees and costs.

9    Dkt. No. 72 at 21. Hernandez, through Rein Law, rejected the defendants' Rule 68 offer and filed

10   the motion for attorneys' fees on December 20, 2013. Dkt. No. 72.

11           Hernandez seeks $87,730[8] in fees and $14,283[9] in costs (including $12,100 in expert fees),

12   totaling $102,013. The requested fees consist of 74.1 hours for attorney Paul Rein at $645 per

13   hour, 68.6 hours for attorney Catherine Cabalo at $425 per hour, and 12.1 hours at $495 per hour

14   for attorney Celia McGuiness, totaling 156.1 attorney hours, 24.6 hours at $175 an hour for

15   paralegal Aaron Clefton and 3.6 hours at $135 per hour for paralegal Holly Jaramillo, totaling 28.2

16   paralegal hours. Rein Law's motion includes billing records for its attorneys and paralegals listing

17   each billing entry. *See* Dkt. No. 73-5 (Rein billing records); Dkt. No. 74-1 (Cabalo billing

18   records); Dkt. No. 75-1 (McGuinness billing records); Dkt. No. 76-1 (Clefton billing records);

19   Dkt. No. 77-1 (Jaramillo billing records). Rein Law did not total the fees requested for various

20   discrete tasks, e.g., drafting complaint, preparing for mediation, factual investigation, etc., and not

21   all of the entries are expressly linked to any particular task, making it difficult to determine exactly

22   the amount of fees incurred for each task.[10] As noted below, I have reviewed the billing records in

23   _____

24   [8] The Supplemental Declaration of Paul Rein states that Hernandez's total request for fees,
     including work on the reply brief in support of the fees motion, is $88,249. Dkt. No. 84, ¶ 9. But
25   the hours claimed by each timekeeper in their billing records plus the additional hours requested
     for the fees motion reply brief add up to the hours and fees listed above.
26

27   [9] In his reply brief, Hernandez reduced his requested costs from $14,433 to $14,283 by subtracting
     $60 for meals and $90 for Federal Express charges.

28   [10] For example, entries such as "meet w/ co-co" are not linked to any particular task.

United States District Court
Northern District of California

close detail and, where practical, allocated the requested fees into discrete tasks when the description was clear enough in order to assess the reasonableness of the fees.

## LEGAL STANDARD

"A prevailing plaintiff under the ADA should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Jankey*, 537 F.3d at 1130 (internal punctuation and citation omitted). The party seeking fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhardt,* 461 U.S. 424, 437 (1983). "When it sets a fee, the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Secalt S.A. v. Wuxi Shenxi Const. Mach. Co., Ltd.*, 668 F.3d 677, 689 (9th Cir. 2012) (citation omitted); *see also Carter v. Caleb Brett LLC*, 2014 WL 350087 (9th Cir. Feb. 3, 2014) ("When determining a reasonable fee award under a federal fee-shifting statute . . . a district court must first calculate the lodestar by multiplying the number of hours reasonably expended by the reasonable hourly rate.") (internal punctuation and citation omitted).

"Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley*, 461 U.S. at 434. Accordingly, the district court should exclude from this initial calculation hours that were not "reasonably expended," including where a case is overstaffed or where claimed hours are "excessive, redundant, or otherwise unnecessary." *Id.*; *Jankey*, 537 F.3d at 1132. District courts should also account for the "wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates. . . . A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983); *MacDougal*, 58 F. Supp. 2d at 1105 (same).

Then, where appropriate, "the district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69-70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation." *Secalt*, 668 F.3d at 689 (citation omitted). The *Kerr* factors are: "(1) the time and labor required, (2) the novelty and

United States District Court
Northern District of California

difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr*, 526 F.2d at 70. "A mere statement that a court has considered the *Kerr* guidelines does not make a decision within the court's discretion." *Carter v. Caleb Brett LLC*, 2014 WL 350087, *1 (9th Cir. Feb. 3, 2014) (citation omitted). "While detailed calculations are not mandated, something more than a bald, unsupported amount is necessary to affirm an award of attorneys' fees. *Id*. (citation and punctuation omitted). The district court must "explain how it arrived at its determination with sufficient specificity to permit an appellate court to determine whether the district court abused its discretion in the way the analysis was undertaken." *Id*. at *2 (citation omitted).

In addition, a court has discretion to reduce a fee award where the plaintiff unreasonably protracted litigation. *Jankey*, 537 F.3d at 1132 ("the court may consider whether Plaintiff protracted the litigation in deciding whether to reduce fees").

## DISCUSSION

My task is to first multiply the number of hours reasonably expended on the litigation by the reasonable hourly rate in order build the presumptively reasonable lodestar figure. To the extent that my consideration of the *Kerr* factors has not already been subsumed in the initial lodestar calculation, I may then adjust the lodestar figure up or down based on the *Kerr* factors. In addition, I may reduce the fee award if the plaintiff unreasonably protracted litigation.

## I. THERE IS NO CHALLENGE TO THE HOURLY RATES OF REIN LAW

Rein Law is "dedicated exclusively to litigating disability access discrimination lawsuits under the ADA and under California law." Rein Decl. ¶ 2 [Dkt. No. 73]. Rein, the principal of Rein Law, charges $645 per hour for his work on this matter. He has represented physically disabled persons in civil rights disability access lawsuits for 38 years, which Rein states is longer than any other attorney in the United States. *Id*. ¶ 1. He has published many articles on disability

access litigation and recently authored "Full and Equal Access: Disabled Rights Litigation in California," which, according to Rein, is the "*only* book published on this subject." *Id.* ¶ 28 n.6 (emphasis in original). The defendants assert that Rein has been counsel on 127 ADA cases in the Northern District since 2006, which Rein Law does not dispute. Opp. at 9.

Cabalo charges $425 per hour. According to Rein Law, she was named a Rising Star in 2011, 2012, and 2013 by *Northern California Super Lawyers*; has "handled . . . multi-million dollar cases . . . through trial and appeal;" has been a civil litigator for 12 years, and has handled ADA cases exclusively for five years. Cabalo Decl. ¶ 3. [Dkt. No. 74].

McGuiness charges $495 per hour. She has been practicing for over 20 years, has tried over 25 cases, and has argued before the California Court of Appeals and the Ninth Circuit. McGuiness Decl. ¶¶ 3-7 [Dkt. No. 75]. She has been a Visiting Clinical Professor at the University of San Francisco Law School and she taught moot court and legal research and writing at Hastings College of Law. *Id.* McGuinness has practiced disability rights law exclusively for six years. *Id.*

The defendants do not challenge the individual hourly rates claimed by Rein Law's attorneys and paralegals. I find that the hourly rates are reasonable.

**II. THE REASONABLENESS OF THE HOURS EXPENDED BY REIN LAW**

As the Factual Background section above demonstrates, this was a relatively straightforward ADA matter. There was no substantive discovery[11] or motion practice. Hernandez filed a complaint. He subsequently amended his complaint to name the proper trust defendant and to give notice of additional barriers to disabled access discovered during the joint site inspection. The defendants disputed liability. Hernandez retained a disability access consultant who visited the site and prepared a report. The parties attended a joint site inspection followed by a mediation where liability and damages issues were resolved, resulting in a $10,000 award to Hernandez and the defendants' agreement to undertake remedial measures not to exceed

---

[11] Rein Law prepared a subpoena to Redwood City for building records. Defense counsel pointed out that these records are publicly available over the counter without a subpoena.

1   $25,000.  The mediation did not resolve attorneys' fees, causing Hernandez to file this motion for

2   attorneys' fees.

3        The defendants contend that the hours and fees claimed by Rein Law are unreasonable

4   because, among other reasons, Rein Law overstaffed this matter, engaged in excessive

5   conferencing, assigned routine work to senior attorneys, and unreasonably duplicated work.  The

6   defendants also argue that Hernandez's expert fees are triple what they should be and that the

7   requested costs are unreasonable.  I agree with many of defendants' criticisms.  While Rein Law is

8   free to allocate work and to supervise cases as the firm sees fit, it is unreasonable to require

9   defendants to pay for the inefficiencies described below.

10       **A.   Overstaffing**

11       Given Rein Law's extensive experience litigating ADA cases, Rein Law is expected to

12   efficiently complete the relevant court filings and other tasks necessary to the litigation of this

13   action.  *See, e.g., Delson v. CYCT Mgmt. Grp., Inc.*, 11-cv-03781 MEJ, 2013 WL 1819265 (N.D.

14   Cal. Apr. 30, 2013) (noting, in ADA case litigated by Rein Law, that "[o]ne of the trade offs of

15   being an expert in a specific filed of law is the expectation that tasks will be completed with

16   greater efficiency because the knowledge base and resources have already been well-established").

17   Instead, a close review of Rein Law's billing records reveals that many of the claimed hours were

18   not reasonably expended and should be excluded from the award.  *Hensley*, 461 U.S. at 434

19   (district court should exclude hours that were not "reasonably expended").

20       As an initial matter, given the relatively simple nature of this matter, it was unreasonable to

21   staff the matter with three attorneys (all of whom have considerable experience in ADA litigation)

22   and two paralegals.  Judge Zimmerman of this Court previously criticized Rein Law for staffing

23   three lawyers on a routine ADA case, noting:

24              Defendants argue that it was excessive for three lawyers to represent
            plaintiff in what is essentially a routine ADA access case against a
25          small business, and the Court agrees.  A routine ADA access case
            does not involve complicated or novel legal issues. Apart from
26          changing the names, times and location, plaintiff's complaint is
            verbally identical to complaints Rein has filed in other ADA
27          lawsuits, including several that Rein has filed on behalf of plaintiff.

28   *White v. Ming R. Shen*, 09-cv-0989-BZ, 2011 WL 31187, *3 (N.D. Cal. Jan. 5, 2011) *vacated,*

United States District Court
Northern District of California

2011 WL 2790475 (N.D. Cal. July 13, 2011).[12]  Other federal courts in California have likewise explained that counsel experienced in ADA cases are expected to complete routine tasks efficiently.  *See, e.g., Kittok v. Leslie's Poolmart, Inc.*, 687 F. Supp. 2d 953, 962 (C.D. Cal. 2009) (finding it "unreasonable that over eleven hours were spent on the largely duplicative motion" for summary judgment in ADA action); *Doran v. Corte Madera Inn Best W.*, 360 F. Supp. 2d 1057, 1062 (N.D. Cal. 2005) ("The Court is similarly skeptical of Mr. Frankovich's requested fees between 2/6/03 and 6/2/03, finding the tasks to be duplicative, tasks that could easily be accomplished by paralegals and, for the most part, tasks that had already been accomplished in prior litigation and were merely copied or adapted for this case."); *Sanford v. Thrifty Payless*, Inc., 2005 WL 2562712 (E.D. Cal. Oct. 11, 2005) (reducing fees in ADA case to reflect that "the complaint, discovery, deposition notices and subpoenas issued in this case are no different from those generated by the myriad of other cases litigated by Plaintiff's counsel").

As one example of overstaffing, there was no need for Rein and Cabalo to spend 11.5 hours each attending the mediation.  This was a simple case and Cabalo, a "Rising Star" with twelve years litigation experience, five of which were exclusively spent on ADA matters, was fully capable of handling it on her own. I strike all of Rein's time for attendance.  Overstaffing also led to excessive conferencing between Rein Law attorneys, accounting for 20% of the total claimed by Rein in this matter, excluding the time Rein spent attending the mediation and the site inspections.  *See, e.g., Cruz v. Starbucks Corp.*, 10-cv-01868-JCS, 2013 WL 2447862, *8 (N.D. Cal. June 5, 2013) (noting that the Court is "troubled" that "Rein spent over 20% of his time in conferences with co-counsel").  Cabalo, who was the lead attorney in this matter, should reasonably be expected to handle the majority of the tasks without supervision from Rein, with paralegal and clerical support as needed.  Recognizing that Rein is the leader of his firm and may have oversight responsibilities with the litigation, I strike 50% of the billing for "conferencing"

---

[12] Judge Zimmerman subsequently granted the parties' motion to vacate the *White* order in accordance with the parties' settlement agreement.  He noted, however, "although vacatur seems to be the appropriate course of action based on the weighing of the equitable factors, *I have not changed my mind regarding the substance of the vacated Orders*." *White v. Shen*, 2011 WL 2790475 (N.D. Cal. July 13, 2011) (emphasis added).

United States District Court
Northern District of California

with Rein.

Related to the overstaffing issue, much of the work claimed in this case was routine work that should reasonably have been performed by less senior attorneys, but was instead performed by Rein. With four decades of experience in this area, Rein is an authority on ADA litigation. But in light of that specialized knowledge and his commensurately high billing rate, Rein should reasonably limit his involvement to matters requiring his level of skill. *See, e.g., MacDougal*, 58 F. Supp. 2d at 1105 (reducing Rein's requested hours and noting that "[a] Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn") (quoting *Ursic*, 719 F.2d at 677); *cf Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929, 969-70 (C.D. Cal. 2010) (reducing fees for drafting background section of brief by 70% because "a paying client would not have paid $650 an hour . . . when the task could have been performed by a less senior, less expensive associate"). Yet the 74.1 hours and $47,794.50 claimed by Rein account for practically half of all attorney hours (154.8) and 58% of the fees claimed by the three billing attorneys in this matter ($82,939).[13] In addition, much of the work performed by Rein and the other attorneys was routine work that could reasonably have been performed by a paralegal at a fraction of the billing rate

The judges in this District have repeatedly criticized Rein Law for exercising poor billing judgment and requesting an unreasonable amount of fees in connection with ADA cases similar to this one, including:

- *Starbucks*, 2013 WL 2447862, *9 ("the time spent by Rein is unreasonable in light of his extensive experience and the fact that the fee motion does not present any legal or factual issues that are particularly new or complicated" and "the Court is troubled by the fact that nearly half of the time billed by McGuiness was spent in meetings and conferences with co-counsel and Rein spent over 20% of his time in conferences with co-counsel");

- *Delson*, 2013 WL 1819265, *8 ("the Court questions why Mr. Rein—rather than Ms. Cabalo—exclusively handled the fees aspect of this case. Ms. Cabalo was lead counsel and handled the majority of the work on the matter prior to the Consent Decree. Had Ms. Cabalo, whose billing rate is $250 less per hour, handled the fees aspect of the case, this would have significantly reduced the amount of fees Plaintiff's counsel billed.");

- *Overbo v. Loews California Theatres, Inc.,* 07-cv-05368-MHP (LB) (N.D. Cal. August 17,

---

[13] This figure excludes claimed paralegal fees.

2010) ("the Court finds that AMC has adequately demonstrated that there are several instances of unnecessary duplication of efforts which inflated the number of hours billed" and "the Court finds that AMC has shown that multiple instances where counsel overbilled for tasks");

- *Saldana-Neily v. Taco Bell of Am., Inc.*, 04-cv-04571, 2008 WL 793872 (N.D. Cal. Mar. 24, 2008) ("given the relative simplicity of the case against the Union 76 Defendants and the expertise of counsel [Rein Law] in disability access cases, these could and should have been kept to a minimum. There were, instead, inefficiencies."); and

- *MacDougal*, 58 F. Supp. 2d at 1105-06 ("[a]lthough some of Rein's hours billed were necessary to this litigation, the Court does not approve of the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates" and "the Court finds that Rein billed his $325 rate for over 70 hours of tasks usually performed by less experienced associates, paralegals or secretaries and for time spent traveling to and from court appearances") (internal citation and punctuation omitted).

Rein Law's continued use of billing practices that have been repeatedly criticized is disturbing.

### B. Unreasonable billing in .1 hour increments

Rein, Cabalo and McGuiness claim fees for 148 .1 hour (six-minute) time entries, totaling 14.8 hours ($7,158), often for multiple .1 hour entries on the same day.  Many of these tasks reasonably took a fraction of six minutes and should have been consolidated into one six-minute task.  For example, on February 2, 2013 Cabalo billed .1 hours for "Telephone call to client regarding upcoming mediation" and another .1 hours for "Preparation of correspondence to client regarding upcoming mediation."  Similarly, on April 22, 2013, Rein billed .1 hours for "Receipt/review court order declining to enter consent decree" and another .1 hours for "Email to mediator Howard Herman w/ court order declining to enter consent decree."  In addition, several of these entries are for non-attorney work and should not be billed, such as Cabalo's January 4, 2013 entry for "Electronically file stipulation for limited relief from General."

The problems with excessive billing in separate six-minute increments are evident here.

United States District Court
Northern District of California

By billing every phone call, email, and review of any notice from the Court[14] as a separate .1 hour entry, Rein Law inflated its fee by thousands of dollars. In addition, many of the .1 hour entries are for conferring and "strategizing" with co-counsel. This Court is critical of the practice of billing for multiple .1 hour entries separately where they could be consolidated. *See, e.g., Cruz v. Int'l Collection Corp.*, 08-cv-00991-JF (RS), 2010 WL 2509988 (N.D. Cal. June 17, 2010) ("Schwinn billed 6.6 hours in discrete six-minute increments, including a six-minute charge for reviewing a notice by Defendants' counsel of an appearance by telephone, often with multiple entries of .10 hours in a single day. Consolidating some tasks would have been more reasonable."); *Bretana v. Int'l Collection Corp.*, 07-cv-5934 JF (HRL), 2010 WL 2510081 (N.D. Cal. June 17, 2010) (same).

As discussed below, the fees requested for conferring with co-counsel are not reasonable given the lack of legal or factual complexity involved and the experience of lead counsel Cabalo. This is doubly true of repeated entries for .1 hours to "strategize" with co-counsel, as it is extremely inefficient to repeatedly confer for only a few minutes at a time.

An in depth written analysis of each of the 148 entries of .1 hour is not practical. Based on my detailed review of Rein Law's records, I find that a 50% reduction in the fees for its .1 hour entries is appropriate.[15] I therefore deduct $3,579 from the lodestar.

### C. Site inspections

Rein made three site-inspections before Hernandez's complaint was filed, totaling 7.2 hours ($4,644). *See* Rein billing records at 1. The defendants argue that "[i]t is inexplicable why

---

[14] As one example of many, Cabalo billed $42.50 for "receipt, review" of a February 21, 2013 docket entry which stated, *in its entirety*:

> Set/Reset Hearing Mediation Hearing reset to 3/20/2013 10:00 AM., at the U.S. District Court, 450 Golden Gate Avenue, 16th Floor, San Francisco, CA 94102. Please report to ADR Reception on the 16th floor for your courtroom assignment. (af, COURT STAFF) (Filed on 2/21/2013) (Entered: 02/21/2013).

[15] To avoid penalizing Rein Law twice for the same entry, I do not include .1 hour entries in my calculation of hours spent on other tasks described below, for example in conferring with co-counsel or preparing for the mediation.

14

Paul Rein would need to go to the property three times personally to 'investigate' the property prior to litigation. One site visit is reasonable." Opp. at 14.  In response, Rein Law states only that the three inspections included an inspection at an El Grullense at a different address "per Rule 11 obligations to determine if there was a pattern of non-compliance." Reply at 4 n.1.  Whether or not Rule 11 obligated Rein Law to inspect other restaurants, I see no reason that the defendants should be saddled with the costs of an inspection that has no bearing on this action.  Nor, given the limited ADA issues at the restaurant, were two site visits necessary.  One inspection is reasonable. I award Rein 2.5 hours ($1,612.5) for one site inspection, which corresponds with his longest site visit at the premises.  I accordingly deduct $3,031.50 from the request.  I do not reduce the fees for 3.6 hours ($1,530) requested by Cabalo for her attendance at the Rule 68 joint site inspection.  *See* Cabalo billing records at 2.

### D. Complaint and first amended complaint

According to my review of Rein Law's billing records, Rein requests 2 hours and Clefton requests .3 hours for preparing the initial complaint, totaling $1,342.50.[16]  As the complaint in this action is largely identical to dozens of other ADA complaints filed by Rein Law, I question why it was reasonable for Rein Law's attorney with the highest billing rate to bill 2 hours to this routine task. *See, e.g., Doran*, 360 F. Supp. 2d at 1062 (awarding .5 hours of 4.3 requested hours to draft complaint in ADA case because the "complaint is a form pleading that is identical in all substantive respects to complaints used in other ADA lawsuits").  I award two hours for this task, comprising one hour for Clefton and one hour for Rein, totaling $820.  I therefore deduct $522.50 in connection with the complaint.

The defendants filed a two-paragraph motion to dismiss on September 5, 2013, arguing that the Court lacked jurisdiction over defendants Oscar Pang Cheng Liu and Chu Ching Liu in the their capacity as trustees of the Oscar Pang Cheng Liu and Chu Ching Liu Trust because there is no such trust. Dkt. No. 14.  The motion to dismiss stated that the correct trust is Liu Family Trust. Hernandez did not oppose the motion to dismiss.  Instead, Hernandez filed a motion for leave to

---

[16] This excludes time billed for factual investigation related to the complaint.

1   file a first amended complaint naming the correct trust. Dkt. No. 20. The motion for leave to

2   amend was not opposed. On October 19, 2013, the Court granted Hernandez's motion for leave to

3   file an amended complaint and denied the motion to dismiss as moot. Dkt. No. 28.

4        By my calculation, Rein Law requests $3,461.50 in fees in connection with the defendants'

5   motion to dismiss, which Hernandez did not oppose, and Hernandez's motion for leave to file an

6   amended complaint, which the defendants did not oppose.[17] The request comprises 1.9 hours for

7   Rein, 1 hour for Cabalo, 9.5 hours for Clefton, and .3 hours for McGuinness. These fees were not

8   reasonably expended. The motion for leave to amend consisted of a brief recitation of the trust

9   issue noted above and one paragraph of argument which cited only one case (for the non-

10  controversial proposition that leave to amend should be freely given). Dkt. No. 20. The amended

11  complaint itself included no changes other than changing the name of the defendant trust. Given

12  the routine nature of the work at issue, it is not clear why Rein Law expended 3.2 hours of

13  attorney time and 9.5 hours of paralegal time on this task. Three hours of paralegal time at

14  Clefton's rate and two hours of attorney time at Cabalo's rate (totaling $1,375) is reasonable for

15  this task. Accordingly, I deduct $2,086.50 in connection with the motion to dismiss and the

16  motion for leave to file a first amended complaint.

### E. Conferencing among Rein Law attorneys

18       An obvious consequence of overstaffing this matter is that Rein Law spent an unreasonable

19  amount of time spent conferencing between counsel. Rein requests 11.4 hours and Cabalo

20  requests 6.4 hours (totaling $10,073) for various meetings with co-counsel to discuss the case,

21  excluding time billed for meeting with co-counsel in preparation for the mediation and in

22  connection with the fees motion and time billed in .1 hour entries addressed above.

23       The Ninth Circuit has approved of reductions in fees for unnecessary and duplicative intra-

24  office conferences. *See, e.g., Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007)

25  ("Given her substantial experience and Welch's failure to provide a persuasive justification for the

26  intra-office meetings, the district court did not err in finding the intra-office conferences to be

---

[17] This excludes time billed for factual investigation regarding the proper trust defendant.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    unnecessary and duplicative.").  Moreover, this Court has previously been critical of excessive

2    conferencing by Rein Law.  *See, e.g., Starbucks*, 2013 WL 2447862, *8 (noting that the Court is

3    "troubled" that "Rein spent over 20% of his time in conferences with co-counsel"); *White*, 2011

4    WL 31187 ("Given the straightforward nature of this case, I find it unreasonable for Rein to

5    consult with co-counsel over 20 times.").

6         Hernandez's reply brief does not explain why the hours billed for conferences were

7    necessary or reasonable.  Hernandez cites *Chabner v. United of Omaha Life Ins. Co.*, 95-cv-0447-

8    MHP, 1999 WL 33227443 (N.D. Cal. Oct. 12, 1999), where Judge Patel rejected the defendants'

9    argument that plaintiff's counsel (not Rein Law) spent an excessive amount conferencing.

10   Hernandez quotes *Chabner*'s statement that "It is certainly valid that the members of plaintiff's

11   legal team met regularly to fashion strategy, update one another on developments, and give and

12   receive instructions regarding work assignments."  Reply at 7 (quoting *Chabner*, 1999 WL

13   33227443, *4).  But immediately preceding the portion of *Chabner* quoted by Hernandez, Judge

14   Patel "acknowledge[d] the factual and legal complexity and unprecedented nature of this action."

15   *Chabner*, 1999 WL 33227443, *4.

16        Like Judge Patel, I believe that attorney conferencing time can be quite valuable.  But

17   unlike *Chabner*, this matter is neither factually nor legally complex, nor unprecedented.  On the

18   contrary, it involved routine legal and factual issues and involved no substantive discovery or

19   motion practice.  Cabalo, the lead attorney in this matter, has 12 years of experience and should

20   reasonably be expected to handle the majority of the tasks without supervision from Rein, with

21   paralegal and clerical support as appropriate.  The trade-off for the higher billing rate that greater

22   experience and specialized knowledge justifies is that more senior attorneys are expected to

23   delegate routine tasks to others with lower billing rates.  *See, e.g., MacDougal*, 58 F. Supp. 2d at

24   1105 (reducing Rein's requested hours and noting that "[a] Michelangelo should not charge

25   Sistine Chapel rates for painting a farmer's barn") (quoting *Ursic*, 719 F.2d at 677).  Many of

26   Rein's entries do not describe the substance of his meetings, including entries such as "Meeting w/

27   co-co re further action," "Meet w/ co-co," "Meet w/ co-co re multiple case issues."  While other

28   entries provide more description of the substance of meetings, none of them suggest the presence

United States District Court
Northern District of California

of complex legal or factual issue necessitating Rein's input at $645 an hour.

Notably, Rein Law requests significantly fewer hours for conferring for Cabalo than for Rein. Rein Law apparently exercised billing judgment in not billing for all the attorneys' participations in the meetings. While the exercise of billing judgment is generally a good thing, the benefits are not realized in cases like this where Rein Law evidently exercised billing judgment in favor of its most expensive attorney. In light of the lack of complexity in this case and Rein Law's failure to explain the need for Rein's meetings with co-counsel, let alone in the amount for which it seeks payment, Rein Law's request is unreasonable.[18] However, recognizing that Rein is the leader of his firm and may have oversight responsibilities with the litigation, I award Rein Law 50% of the billing it requested for conferring.[19] I accordingly deduct $5,036.50 from the lodestar in connection with time for conferencing.

### F. Mediation

By my count, excluding the considerable amount of time billed in six-minute increments addressed above, Rein Law claims approximately $19,000 in attorneys' fees in connection with preparing for and attending the mediation.[20] The $19,000 includes 11.5 hours for Rein to attend the mediation, 4 hours for Rein to prepare for the mediation and the mediation statement ($9,997.50 total for Rein), 11.5 hours for Cabalo to attend the mediation, and 9.3 hours for Cabalo to prepare for the mediation and the mediation statement ($8,840 total for Cabalo). This is excessive.

---

[18] Notably, more than half of the fees requested for conferencing occurred after the mediation, at which time the case had greatly simplified as all disputed issues had been resolved except for attorneys' fees and costs.

[19] Not including time conferring in preparation for the mediation and for the fees motion (which is not included in this calculation).

[20] This figure accounts for more than 40% of the $45,090 in fees claimed by Rein Law through the mediation from which the settlement demand was calculated. *See* Rein Second Supplemental Declaration ¶¶ 2-3. The figure excludes entries which likely related to the mediation but which did not specifically refer to the mediation, such as "Meet w/ co-co" or "Review memos re possible ADA implications if building dept doesn't allow provision of an accessible restroom." As a result, Rein Law likely billed considerably more than $19,000 in connection with preparation for the mediation.

United States District Court
Northern District of California

1    Given the relatively simple nature of ADA cases like the present matter, other judges in

2 this District have criticized Rein Law for requesting fees for two attorneys' preparation for and

3 participation in mediation and have substantially reduced fees accordingly. For example, in

4 *Delson*, 2013 WL 1819265, *7, Judge James stated that Rein Law "failed to articulate why it was

5 necessary for two attorneys to attend the mediation or why that amount of preparation was

6 necessary for a case that was not complicated, especially for attorneys with extensive experience

7 handling such cases." As a result, Judge James deducted the 16 hours Rein billed for preparing for

8 and attending the mediation. Similarly, in *Saldana-Neily*, 2008 WL 793872, *10, Judge Jenkins

9 stated that "given Mr. Rein's experience, it is not clear why both he and Ms. Ostil needed to attend

10 the settlement conference on July 12, 2005."

11    Unbowed by these criticisms, Rein Law has requested fees for both Rein's and Cabalo's

12 preparation for and attendance at the mediation. Like other judges in this District, I question the

13 need for both Rein and Cabalo to prepare for and attend the mediation. Given Cabalo's

14 qualifications and experience,[21] she should reasonably be expected to handle the mediation on her

15 own with limited input from Rein, especially given Rein's assertion that Cabalo was "lead

16 counsel" and that she handled the "major portions of this case." Rein Decl. ¶ 11.[22]

17    I deduct 14.5 hours ($9,352.50) of the hours which Rein billed for preparing for and

18 attending the mediation. *Compare Delson*, 2013 WL 1819265, *7 (deducting 16 hours ($10,320)

19 that Rein billed for preparing for and attending the mediation). By my count, this awards Rein one

20

21

22

---

23 [21] Rein Law justifies Cabalo's $425 hourly fee with a detailed recitation of her accomplishments

24 and qualifications. *See* Mot. at 14.

[22] At oral argument, Rein stated that he was responsible for the fees portion of this case while

25 Cabalo was responsible for the other portions. There is no reason that one attorney could not have

26 handled both aspects, particularly given that the fees relate directly to the work conducted on the case. In effect, Rein Law assigned work that could have been handled by one attorney to two

27 attorneys, and then billed for both attorneys' time at the entire mediation, even though Rein was

28 not necessary for the first part of the mediation, regarding the underlying merits, and Cabalo was not necessary for the second part of the mediation, relating to fees and costs.

hour for preparing for the mediation.[23]  This is a reasonable amount of time for a senior attorney with Rein's experience—and commensurately high hourly rate—to spend consulting with Cabalo in advance of the mediation.

I also find that Cabalo spent an unreasonable amount of time preparing for the mediation. According to Cabalo's billing records, 2.7 hours of that time was spent preparing the mediation statement, which is reasonable.  Cabalo billing records at 7.  But an additional 6.6 hours on various poorly defined tasks whose value is not evident is not reasonable.[24]  I deduct 3.9 hours ($1,657.50) of the hours requested by Cabalo for preparing for the mediation and preparing the mediation statement.  This leaves Cabalo 5.4 hours ($2,295) for those tasks, which is reasonable in this case.[25]

### G.  Preparing for and attending case management conferences

Cabalo billed 2.7 hours ($1,147.50) to attend—not to prepare for—a case management conference on August 6, 2013 which lasted *six* minutes.  Dkt. No. 62 (civil minutes of case management conference); Cabalo billing records.  The matter was called at 2:08 pm, so Cabalo had to wait in the courtroom for eight minutes before the matter was called. Tellingly, ten months earlier, before the mediation, McGuiness billed 1.7 hours ($841.50) to attend an 11-minute case

---

[23] This excludes Rein's time entries before the mediation for meetings with his co-counsel to discuss "case status" and "case issues."  *See* Rein billing records.  While those entries do not mention "mediation" specifically, they likely related to the mediation.

[24] It appears that many of these tasks are non-legal matters and should reasonably have been handled by a non-attorney.  *See, e.g., Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992) ("It simply is not reasonable for a lawyer to bill, at her regular hourly rate, for tasks that a non-attorney employed by her could perform at a much lower cost."), *opinion vacated in part on denial of reh'g,* 984 F.2d 345 (9th Cir. 1993).  Many of the entries are for emails and calls regarding the mediation, but there is no discussion of any substance in these entries, including entries such as "Multiple emails with mediator and defense counsel," "Multiple emails with access consultant regarding mediation."  A few such entries would not appear unreasonable, but many such entries in combination suggest excessive billing for clerical tasks, especially where there is no explanation of the substance of these communications.

[25] Of course, virtually all of the work Rein Law performed in this matter before the mediation was in preparation for the mediation.  The site inspections, the limited discovery it undertook, the factual investigation, and its work with the access consultant all related to the merits of the case, which was central to the mediation.  Accordingly, although I ostensibly award Cabalo 5.4 hours and Rein one hour for preparing for the mediation, the reality is that the great majority of the fees which I award Rein Law through the mediation were incurred in preparation for the mediation.

United States District Court
Northern District of California

1    management conference in October 2012.  Dkt. No. 44 (civil minutes of case management

2    conference); McGuinness billing records at 3.  I deduct 1 hour ($425) from Cabalo's request to

3    allow for reasonable travel time to and from Rein Law's office.

4          On top of the fees for attending the case management conferences, Rein Law requests fees

5    for approximately 5.8 hours[26] ($3,004) to prepare the two corresponding case management

6    statements and prepare for the conferences, comprising 1.4 hours for Rein, 1.1 hours for Cabalo,

7    and 3.3 hours for McGuinness.  This is excessive given the nature of this case, the statements

8    themselves and Cabalo's and McGuinness's considerable experience.  2 hours each for Cabalo and

9    McGuinness is reasonable, totaling $1,840.  I deduct $1,164 from the lodestar for preparing the

10   case management conferences.

11         **H.  Fees motion**

12         Rein Law requests approximately $16,474 for preparing its motion for attorneys' fees,

13   comprising 19 hours for Rein, 8.2 hours for Cabalo, 1.2 hours McGuiness, and .8 hour for

14   Clefton.[27]  Rein Law's request is unreasonable because the motion does not raise novel legal or

15   factual issues, the opening brief is virtually identical to prior fees motions filed by Rein Law, and

16   because Rein Law assigned the majority of the work (67% of the attorney hours) to its most senior

17   attorney at $645 per hour.

18         Judges in this District have, on several occasions, criticized the fees sought by Rein Law

19   for work on re-purposed fees motions.  *See, e.g.*, *White*, 2011 WL 249459, *1 (N.D. Cal. Jan. 25,

20   2011) ("I see no reason why Mr. Rein had to spend so much time preparing this fee motion; it

21   could have been done by a more junior attorney.  I note that much of the moving papers is

22

23   ——————————————

24   [26] Some of these entries are improperly block-billed, making it impossible for me to determine
     whether a reasonable amount of time was spent on each task.  For example, on July 11, 2013, Rein
25   billed .8 hours for "Work on plaintiff's portion of Jt CMC Statement; instructions to staff re
     communications w/ defense counsel, their additions, etc. toward filing."  Block-billing is separate
26   grounds for reducing fees.

27   [27] These figures are based on my review of the billing records submitted with Rein Law's motion,
     Rein's declaration, and the reply declarations of Rein and Cabalo in support of Rein Law's fees
28   motion.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   substantially similar to papers filed by Mr. Rein in support of motions for attorney's fees in his

2   other ADA access cases."); *Overbo*, 07-cv-05368 MHP (LB) (N.D. Cal. August 17, 2010) ("the

3   only parts of [Rein Law's] 21-page motion that are case-specific are the factual and procedural

4   history section and the sections itemizing Plaintiffs' fees and litigation expenses"), *Report and*

5   *Recommendation adopted* September 7, 2010); *George v. Bay Area Rapid Transit Dist.*, 00-cv-

6   2206 CW, 2007 WL 2778784 (N.D. Cal. Sept. 21, 2007) (awarding counsel, including Rein Law,

7   15 hours for fees motion instead of 65 hours requested because issues in fees motion "substantially

8   overlap with those in the previous motion").   In this case, Rein Law's opening brief on the fees

9   motion is virtually identical to a brief filed by Rein Law in this Court in March 2013 in *Cruz v.*

10  *Starbucks Corp.*, 10-cv-01868-JCS (Dkt. No. 72).  The only differences between the briefs are the

11  identities of the parties and property at issue and a brief recitation of the settlement negotiations.

12  The legal arguments and authorities cited in *Starbucks* are repeated word-for-word in this brief.[28]

13  A fees motion filed by Rein Law in November 2012 in *Delson* (Dkt. No. 23) also featured legal

14  arguments identical to those presented here.  All three briefs even include the seemingly fact-

15  specific assertions that "Defendants' choices made this case much more complicated than it

16  needed to be, necessitating additional work for plaintiff's attorney" and that "If defendants

17  complain about how much time plaintiff's attorneys have been required to spend on this case, they

18  have only themselves to blame."

19       Even though the opening brief is in large part a copy of a prior brief, Rein billed 11.6

20  hours, Cabalo billed 2.6 hours, McGuiness billed 1.2 hours, and Clefton billed .8 hours (totaling

21  16.2 hours and $9,321) in connection with the opening brief. 4 hours at Cabalo's rate, one hour at

22  Rein's rate and 4 hours for Clefton's rate (totaling $3,045) is more than reasonable for this work.

23  Accordingly, I deduct $6,276 from the lodestar in connection with the opening brief on the fees

24  motion.

25       Rein Law claims fees for 7.4 hours for Rein and 5.6 hours for Cabalo (totaling $7,153) to

26  work on its 12-page reply brief in support of the fees motion.  Although filed in response to the

27

28  [28] The *Starbucks* fees motion includes a short subsection not included in the present motion.

United States District Court
Northern District of California

defendants' opposition, many of the arguments in Rein Law's reply brief retread territory covered in prior reply briefs filed by Rein Law, including, predictably, responses to defendants' allegations of excessive conferencing, overstaffing, and duplication of work.  For example, reply briefs submitted by Rein Law in *Starbucks*, *Delson*, *Overbo*, and *White* each address some or all of these issues.  In short, while the defendants' opposition raised issues to which Rein Law's reply brief properly responded, the reply brief did not involve complex or novel legal or factual issues.  As such, there was no need for Rein to handle most of the brief; Cabalo should have led the effort with minimal support from Rein.  *See, e.g., Starbucks*, 2013 WL 2447862, *9 ("[T]he time spent by Rein [on the fees motion] is unreasonable in light of his extensive experience and the fact that the fee motion does not present any legal or factual issues that are particularly new or complicated."); *Delson*, 2013 WL 1819265, *8 ("Had Ms. Cabalo, whose billing rate is $250 less per hour [than Mr. Rein's], handled the fees aspect of the case, this would have significantly reduced the amount of fees Plaintiff's counsel billed.").  8 hours for Cabalo and one hour for Rein, totaling $4,045, is sufficient.  I therefore deduct $3,108 from the lodestar in connection with the fees motion reply brief.

Fifteen years ago, Rein Law apparently completed a fees motion in an ADA case in a fraction of the time it takes now.  In *MacDougal*, Rein Law requested 8.4 hours for preparing a fees motion, with all 8.4 hours billed by Rein.  58 F. Supp. 2d at 1101.  Judge Jenkins found the number of hours reasonable, but found that the work should have been performed by a more junior attorney because the "motion and its supporting declarations were mainly reproductions of documents filed and utilized in Rein's other cases" and therefore "the 8.4 hours billed did not warrant any specialized legal expertise."  *Id*. at 1106.  Judge Jenkins therefore awarded Rein Law 8.4 hours for the fees motion at reduced rate of $195 an hour instead of $325—Rein's rate at the time.  *Id*.

In the fifteen years since *MacDougal*, Rein's hourly rate has nearly doubled to $645 an hour, reflecting his depth of experience and specialized knowledge.  But Rein's increased rate has apparently not resulted in increased efficiencies, as would be expected to justify the increased rate.  Rein Law spent nearly four times the amount of time preparing the fees motion in this case than it

23

did in *MacDougal*.[29]  Rein Law's experience litigating hundreds of ADA actions has clearly led to efficiencies within the firm, as evidenced by the repurposed nature of Rein Law's fees motion.[30] But these efficiencies are not reflected in the fees requested by Rein Law.

### I.  Research fees lacking due diligence

The defendants assert that $917 requested by Rein Law for researching the correct identity of the owners of the subject property (3.4 hours for Clefton and .5 hours by Rein) should be deducted because Hernandez ultimately improperly named Oscar Pang Cheng Liu and Chu Ching Liu Trust instead of the proper trust, Liu Family Trust.  I am not persuaded that Rein Law did not exercise due diligence in researching the owners of the property.  While they turned out to be incorrect, the records relied on by Rein Law, including the California Secured Assessment System and real property tax assessor records from Westlaw, identified the owner as the Oscar Pang Cheng Liu and Chu Ching Liu Trust.

### J.  Other fees

The fees discussed above account for $66,983.50 of the $87,730 in fees claimed by Rein Law, leaving $20,746.50 in fees not addressed.  It is not practical for me to discuss each of the remaining fee entries in the detail I have addressed the fees discussed above.  However, the Ninth Circuit has stated that a "district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  *See also Gonzalez v. City of Maywood*, 729 F.3d 1196, 1200 (9th Cir. 2013) ("when a district court reduces either the number of hours or

---

[29] The *MacDougal* order on the motion for attorneys' fees does not expressly state whether the 8.4 hours was for the opening brief only or for both the opening brief and the reply brief.  The order does not separately discuss a reply brief, although Rein Law filed one, suggesting that the 8.4 was for both the opening and reply briefs.  Even assuming that 8.4 hours was only for the opening brief, *MacDougal* powerfully shows the unreasonableness of the hours requested in this case, in which Rein Law is seeking fees for 15.4 attorneys hours for the repurposed opening brief alone.

[30] There is nothing improper about repurposing prior filings where appropriate.  Indeed, counsel are encouraged to maximize efficiencies by limiting the amount of time preparing tasks already completed in prior engagements.  The problem arises where counsel repurposes prior work but the efficiencies are not reflected in fee requests, as is the case here.

United States District Court
Northern District of California

1    the lodestar by a certain percentage greater than 10%, it must provide a clear and concise

2    explanation for why it chose the specific percentage to apply").

3           Based on my detailed review of Rein Law's billing records, I find that a 5% reduction of

4    the remaining fees is appropriate to account for overstaffing, assigning routine work to senior

5    attorneys, excessive billing for duplicative work,[31] review of routine notices from the Court, [32] and

6    several instances of block billing.  I therefore reduce the lodestar for the fees not already addressed

7    by $1,037.33.  *See, e.g., Smith v. Santa Rosa Press Democrat*, 11-cv-02411-SI, 2011 WL

8    7777108, *2 (N.D. Cal. Dec. 19, 2011) (reducing lodestar by 10% because of "evidence of some

9    unnecessary duplication").

### K.  Hernandez's consultant fees

11          Hernandez's request includes $14,283 in costs, $12,100 of which are fees for access

12   consultant Jonathan Adler (billed at $240 per hour).  The defendants argue that Adler's fees are

13   "grossly overinflated" compared to what Adler has requested in other cases.  The defendants note

14   that Adler requested $5,401 in fees in *Hernandez v. Dehoff Enterprises, Inc.,* 12-cv-01467-NC in

15   December 2012, another ADA case brought by Hernandez and litigated by Rein Law, even though

16   Adler's expert reports in that case and this case are substantially similar in length and substance.

17   The defendants identify three other ADA actions prosecuted by Rein Law where access

18   consultants were awarded between $3,313.05, $3,698.70 and $5,999.90.  Opp. at 15.

19          I agree that Adler's requested fees are unreasonable. I am skeptical that the hours he

20   expended on substantive work were necessary, given the much lower amounts in other cases.

21   Moreover, his requested fees include 10 hours ($2,400) for travel to and from two site inspections

22   and the mediation.  The defendants should not be responsible for Hernandez's choice to employ an

---

[31] For example, Rein, Cabalo and McGuinness all request fees for reviewing the Case Management Order and Reference to ADR Unit filed by the Court on September 26, 2012. Likewise, both Rein and Cabalo request fees for receipt and review of the September 25, 2012 Clerk's Notice setting a case management conference.  These are but two examples indicating that a modest reduction to account for duplicative work is appropriate.

[32] For example, Rein requests $129 for review of a Notice of Impending Reassignment to a District Judge and another $129 for review of a case management order.  *See* Rein billing records at 4.

United States District Court
Northern District of California

access consultant requiring extensive travel time that would be compensated at his regular expert

fee rate.  Accordingly, I deduct 8 hours ($1,920) from Adler's fee request.

### L.  Copying costs

The defendants assert that Hernandez was required to file a Bill of Costs under Local Rule

54-1.  Hernandez responds that "Local Rule 54 does not apply to ADA cases, where, as here, no

judgement [sic] was entered."  Reply at 12.  The matter is moot as Hernandez has submitted all

relevant invoices, billings, and receipts, enabling the Court to determine the reasonableness of the

claimed costs.

Rein Law seeks $1,063 in copying costs.  *See* Rein Decl. ¶ 32.  Even at the rate of $.25 per

page, $1,063 amounts to 4,252 pages.  *See* Clefton Decl. ¶ 18 (stating that Rein Law bills $.25 per

page for black and white copies).  Hernandez does not explain why this case required Rein Law to

make 4,252 copies.  For a case of this scope, the Court estimates that 1,000 copies is more than

sufficient, totaling $250.  I therefore deduct $813 from the claimed costs.

## III. CALCULATION OF TO THE LODESTAR

For the reasons detailed above, I find that $50,453.68 of the fees and $11,550 of the costs

(totaling $62,003.68) requested by Rein Law in this matter were reasonable.  Adjustment to this

figure based on the *Kerr* factors is not necessary because my consideration of the *Kerr* factors was

subsumed in the preceding analysis.  *See, e.g., Secalt*, 668 F.3d at 689 (where appropriate, district

court may adjust the lodestar based on the *Kerr* factors "*that have not been subsumed in the*

*lodestar calculation*") (emphasis added).

The award to Rein Law of $62,003.68 is much higher than defendants urge is fair.  If I find

that Hernandez unreasonably protracted the litigation, I would have the discretion to further reduce

Rein's fees.  Notably, the General Order 56 statement of fees and costs which Rein Law provided

to the defendants after the merits were resolved included over $20,000 in unreasonable fees and

costs, which arguably protracted the litigation.  But the defendants chose to contest liability

instead of promptly conceding that their premises violated the ADA.  If they felt Hernandez's

settlement position was unreasonable, they could have made a Rule 68 offer much earlier than

they did to cut off the inevitable growth of plaintiff's fees and costs.  I will not protect defendants

from the consequences of their litigation decisions.  I will not speculate that the parties would have settled at the mediation if Rein had quoted an amount of fees and costs commensurate with this Order's analysis.

In sum, I make the following adjustments to Hernandez's requested fees and costs:

| CATEGORY | REQUESTED | DEDUCTED | AWARDED |
|---|---|---|---|
| FEES | | | |
| .1 hour entries | $7,158.00 | $3,579.00 | $3,579.00 |
| Rein site inspections | $4,644.00 | $3,031.50 | $1,612.50 |
| Initial complaint | $1,342.50 | $522.50 | $820.00 |
| Motion to dismiss/ leave file amended complaint | $3,461.50 | $2,086.50 | $1,375.00 |
| Conferences | $10,073.00 | $5,036.50 | $5,036.50 |
| Rein prepare for and attend mediation | $9,997.50 | $9,352.50 | $645.00 |
| Cabalo prepare for and attend mediation | $8,840.00 | $1,657.50 | $7,182.50 |
| Prepare for and attend case management conferences | $4,993.00 | $1,589.00 | $3,404.00 |
| Attorneys' fees motion | $16,474.00 | $9,384.00 | $7,090.00 |
| Other fees | $20,746.50 | $1,037.33 | $19,709.18 |
| Total Fees | $87,730.00 | $37,276.33 | $50,453.68 |
| COSTS | | | |
| Adler consultant fees | $12,100.00 | $1,920.00 | $10,180.00 |
| Copying costs | $1,063.00 | $813.00 | $250.00 |
| Other costs | $1,120.00 | $0.00 | $1,120.00 |
| Total costs | $14,283.00 | $2,733.00 | $11,550.00 |
| TOTAL FEES AND COSTS | $102,013.00 | $40,009.33 | $62,003.68 |

## CONCLUSION

Hernandez's motion for attorneys' fees and costs is GRANTED in part and DENIED in part.  The defendants shall pay Hernandez $50,453.68 in fees and $11,550 in costs (totaling $62,003.68).

**IT IS SO ORDERED**.

Dated: April 30, 2014



WILLIAM H. ORRICK
United States District Judge